5 F.3d 544
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Vincent M. UMTUCH, Defendant-Appellant.
 No. 92-30438.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 16, 1993.
Decided Aug. 27, 1993.
 
 Appeal from the United States District Court for the Eastern District of Washington; No. CR-92-2041-01-AAM, Alan A. McDonald, District Judge, Presiding.
 E.D.Wash.
 AFFIRMED.
 Before CANBY, WIGGINS and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant-appellant Vincent Umtuch challenges the district court's decision to assign him the base offense level applicable to reckless, rather than criminally negligent, involuntary manslaughter. Umtuch pleaded guilty to involuntary manslaughter, 18 U.S.C. Secs. 1153 and 1112. In his plea agreement, Umtuch admitted that his offense conduct had been criminally negligent and that he should be assigned a base offense level of 10 pursuant to United States Sentencing Guideline section 2A1.4(a)(1). The presentence report, however, concluded that Umtuch's conduct had been reckless and recommended a base offense level of 14 pursuant to guideline section 2A1.4(a)(2).
 
 
 3
 The district court concurred with the presentence report and assigned Umtuch a base offense level of 14. Umtuch appeals this decision, asserting that his conduct did not amount to recklessness as defined by the guidelines.
 
 
 4
 We affirm.
 
 DISCUSSION
 
 5
 Umtuch's sole contention in this appeal is that the district court should have applied the base offense level applicable to criminal negligence because the risk that Umtuch's conduct created was not so egregious as to amount to a gross deviation from the standard of care that a reasonable person would exercise under the circumstances. See U.S.S.G. Sec. 2A1.4 app. n. 1 (defining recklessness).
 
 
 6
 The determination that Umtuch's conduct was reckless turned on the court's assessment of the evidence and we review it for clear error; that is, unless we are left "with the definite and firm conviction that a mistake has been committed," we will not disturb the sentencing court's finding. United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991); see also United States v. Karlic, No. 91-50091, slip op. 6391, 6398 (9th Cir. June 23, 1993) (reviewing for clear error district court's determination that arson defendant knowingly created substantial risk as defined by sentencing guidelines).
 
 
 7
 According to Umtuch, the district court gave inadequate weight to the mitigating effect of his victim's provocative behavior. Umtuch points out that he tried to retreat after the initial confrontation with Eve Ike and Daniel Gomez but was pursued to his residence; that he had no way of telephoning for help while Tommy McDonald, the victim, pounded on Umtuch's door with a wrench; and that McDonald struck the first blow after Umtuch, armed with a knife, stepped out of the house. In addition, Umtuch asserts that the record shows that one of his pursuers, Ike, was able to gain entry into the residence even after Umtuch closed the door.[1]
 
 
 8
 Neither these facts nor any other aspect of the case leaves us with the definite and firm conviction that the district court made a mistake in assigning Umtuch the base offense level applicable for reckless involuntary manslaughter. There is no clear indication in the record that McDonald or Ike was about to enter the residence when Umtuch grabbed the knife and stepped out. The record supports the district court's finding that Umtuch, in a state of intoxication, "decided to take the butcher knife in hand and go out and engage the foe." The district court did not err in concluding that this conduct "constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. Sec. 2A1.4 app. n. 1.
 
 
 9
 Indeed, Umtuch admitted as much in his plea agreement, which provides that Umtuch's offense conduct was "criminally negligent [and] therefore pursuant to Sentencing Guidelines section 2A1.4(a)(1) the defendant's base offense level is 10." According to the application notes to section 2A1.4:
 
 
 10
 'Reckless' refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.
 
 
 11
 "Criminally negligent" refers to conduct that involves a gross deviation from the standard of care that a reasonable person would exercise under the circumstances, but which is not reckless....
 
 
 12
 Id. app. n. 1 & 2 (emphasis added). The conduct elements of these definitions overlap: Both recklessness and criminal negligence encompass conduct that grossly deviates from the standard of care that a reasonable person would exercise in the same circumstances.[2] By pleading guilty to criminally negligent involuntary manslaughter, therefore, Umtuch admitted that his conduct was a gross deviation from the standard of care that a reasonable person would exercise in the same situation.
 
 
 13
 We affirm the district court's decision to assign Umtuch the base offense level applicable to reckless involuntary manslaughter.
 
 
 14
 AFFIRMED.
 
 
 15
 WIGGINS, Judge, dissenting.
 
 
 16
 The admitted facts of this case compel me to write separately. The parties both concede that the following events occurred.
 
 
 17
 Umtuch and his common law wife returned home from an evening of drinking. Both were intoxicated. While walking to their home, they were confronted by Eve Ike. Umtuch and Ike engaged in a shouting match. Umtuch pushed Ike to the ground. As he did so, a friend of Ike, Daniel Gomez, struck Umtuch on the head and shoulder with a large wrench.
 
 
 18
 Umtuch retreated from Gomez and followed his common law wife home. Upon her arrival, the common law wife passed out on the living room couch. Ike entered the house shortly thereafter and began shouting at Umtuch's common law wife. Umtuch responded by pushing Ike out of the house and shutting the door.
 
 
 19
 After a short time, Gomez and Tommy McDonald appeared outside of the door of Umtuch's residence. McDonald began beating on the door with the wrench Gomez had used earlier, and demanded that Umtuch came out.
 
 
 20
 Umtuch did not have a telephone in his home.
 
 
 21
 Umtuch picked up a butcher knife and went out of the house. He said, "I am going to kill that God-damned Mexican" or words to that effect. McDonald, who had the wrench, struck the first blow. Umtuch and McDonald then began fighting physically. Umtuch was struck repeatedly with the wrench; McDonald was fatally stabbed.
 
 
 22
 McDonald was also intoxicated.
 
 
 23
 Umtuch was arrested and charged with involuntary manslaughter. He told the facts related above to his court appointed counsel. Umtuch subsequently entered a plea of guilty pursuant to a negotiated plea agreement. The agreement stated that "the conduct involved in this offense was criminally negligent...."
 
 
 24
 The sentencing court did not agree. It found Umtuch to have engaged in reckless conduct, rather than negligent conduct, and sentenced him to 18 months in prison.
 
 
 25
 The facts of the altercation between Umtuch and McDonald strongly suggest that a plea of self defense would have been proper. The home of Umtuch was being attacked by an unknown person using a heavy instrument. Umtuch could not telephone the police. He armed himself with a knife and opened the door. He was confronted by two men, one of whom possessed a wrench. McDonald struck the first blow. They engaged in mutual combat. McDonald was killed.
 
 
 26
 I do not fault Umtuch's counsel. Umtuch personally made the decision to plead guilty. I believe the decision may have been unwise, however, given these facts, but it was made and Umtuch is bound by it. The question on appeal is one of sentencing.
 
 
 27
 My colleagues conclude that the sentencing judge was fully justified in characterizing the conduct of Umtuch as reckless, rather than criminally negligent. Agreement with the sentencing judge costs the defendant an extra six months to a year in prison. See U.S.S.G. Sec. 2A1.4.
 
 
 28
 I cannot concur. Perhaps my conclusion is founded on sympathy for the defendant, but I am nevertheless of the definite and firm conviction that a mistake has been committed. My review is for clear error. See, United States v. Karlic, No. 91-50091, Slip op. 6391, 6398 (9th Cir. June 23, 1993). I find that the district court clearly erred in characterizing the defendant's conduct as reckless, rather than criminally negligent.
 
 
 29
 I would remand for resentencing.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The record does not clearly support Umtuch's allegation that Ike entered the residence after Umtuch closed the door
 
 
 [2]
 The difference between reckless conduct and criminally negligent conduct, as defined in section 2A1.4, is that criminal negligence does not require that the defendant be aware of the risk resulting from his conduct, whereas recklessness entails awareness of the risk